**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LARRY B. SHORT, | ) | CASE NO. 5:06CV2838 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

Larry Short ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1 at 1-2. Plaintiff asserts: (1) that the Administrative Law Judge ("ALJ") erred in finding that Plaintiff retains the residual functional capacity ("RFC") to perform the full range of sedentary work; and (2) that the ALJ did not sufficiently assess Plaintiff's mental restrictions. ECF Dkt. #15 at 1. For the following reasons, the Court DENIES Plaintiff's appeal and AFFIRMS the ALJ's decision.

## I.    PROCEDURAL HISTORY

On October 20, 2002, Plaintiff filed applications for DIB and SSI. Tr. at 52-54. The applications were denied initially and upon reconsideration. *Id*. at 35-39, 40-43. On August 26, 2003, Plaintiff filed a request for a hearing before an ALJ. *Id*. at 44. On May 22, 2006, an ALJ conducted a hearing where Plaintiff and his attorney appeared. *Id*. at 575-606. The ALJ received testimony from Plaintiff; Dr. Jonathan Nusbaum, a medical expert; and Dr. Jerry Olsheski, a vocational expert. *Id*. On July 24, 2006, the ALJ issued a Notice of Decision-Unfavorable. *Id*. at 14-23. On August 13, 2006, Plaintiff filed request for review of the ALJ's decision. *Id*. at 12. On

September 27, 2006, the Appeals Council denied Plaintiff's request, making the ALJ's decision the final decision of the Commissioner. *Id*. at 9-11.  On November 25, 2006 Plaintiff filed the instant suit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.      SYNOPSIS OF THE FACTS

### A.      Personal Background

Plaintiff was born on September 27, 1956, making him approximately 51 years old.  Tr. at 52.  He has an eighth grade education.  *Id*. at 580.  At the time of the hearing before the ALJ, Plaintiff resided with his wife and his 16 year old son.  *Id*. at 579.

Plaintiff worked at a metal stamping plant from July 1985 until September 1996.  Tr. at 62.  He was the supervisor for the last two years he was there.  *Id*. at 582.  Plaintiff worked as a construction worker from July 1996 until December, 1999.  *Id*. at 62.  Lastly, Plaintiff worked as an electrician from December, 1999 until October, 2002.  *Id*.  In 2001, Plaintiff had a heart attack and was absent from work for two weeks.  *Id*. at 581.  Following the heart attack, Plaintiff began experiencing panic attacks.  *Id*.  In 2002, Plaintiff was discharged without being provided a reason.  *Id*. at 581.

### B.      Medical Evidence

### (i)      Physical Impairments

On September 4, 2001, Plaintiff presented to the Wadsworth-Rittman Hospital Emergency Department with reports of chest pain.  Tr. at 154.  He was diagnosed with an acute inferior wall myocardial infarction — a heart attack — and was treated with the placement of cardiac vessel stents.  *Id*. at 153-61.

On December 6, 2002, Robert Sibilia, M.D. diagnosed Plaintiff with sleep apnea.  Tr. at 206-207.  Dr. Sibilia instructed Plaintiff to stop smoking cigarettes, and he suggested a set of pulmonary function studies.  *Id*. at 207.

On November 25, 2002, Plaintiff presented to Dunlap Memorial Hospital with complaints of chest pain.  Tr. at 199.  He was admitted and chest x-rays were taken.  *Id*. at 199-201.  The x-rays showed cardiomegaly with perihilar vascular cuffing with an interstitial edema pattern consistent with congestive heart failure.  *Id*. at 201.  Plaintiff was diagnosed with acute exacerbation of

-2-

congestive heart failure and discharged. *Id.*

On January 3, 2003, Charles Milligan, D.O., Plaintiff's primary care physician, completed a report setting forth diagnoses of obesity, high blood pressure, panic attacks, seizure disorder, and back and leg pain. Tr. at 210. Dr. Milligan also noted that Plaintiff's x-rays showed mild to moderate bilateral degenerative arthritis in Plaintiff's knees. *Id.* at 211. Dr. Milligan noted that Plaintiff weighted 304 pounds and smoked 1½ packs of cigarettes a day. *Id.* at 210. Dr. Milligan stated that Plaintiff's panic disorder ensued following his heart attack in 2001, but they have been well-controlled with medication. *Id.* at 211. Plaintiff's sleep apnea, seizure disorder, and blood pressure were also well-controlled, but his cholesterol was not. *Id.* Dr. Milligan concluded that Plaintiff was not limited in standing, walking, lifting, grasping, bending, or stooping, but he had significant problems rising from the seated position due to arthritis. *Id.* at 211-12.

On January 21, 2003, Lokendra Sahgal, M.D. performed a consultive evaluation. Tr. at 218-221. Dr. Sahgal diagnosed Plaintiff with: a history of coronary artery disease; a history of congestive heart failure; a history of arthritis in both knees and the lower back; a history of epilepsy, under good control; a history of narcolepsy and sleep apnea under treatment and evaluation; and exogenous obesity. *Id.* at 220. Dr. Sahgal concluded that Plaintiff was not significantly limited in his mental or physical capacities. *See Id.* at 220-21.

In February of 2003, Charles Derrow, M.D. reviewed Plaintiff's medical reports and concluded that Plaintiff was limited to frequent climbing of ramps and stairs, and occasional climbing of ladders, ropes, and scaffolds. Tr. at 229-33. He was also limited to occasional balancing, kneeling, crouching, and crawling. *Id.* at 231. Further, Dr. Derrow opined that Plaintiff could stand for two hours in an eight-hour work day and could sit with normal breaks for a total of six hours in an eight-hour work day. *Id.* at 230.

On September 17, 2003, Dr. Milligan drafted a report for the Bureau of Disability Determination. Tr. at 342-43. He opined that Plaintiff's panic attacks are fairly well-controlled by a high dose of Paxil. *Id.* at 342. He further opined that Plaintiff is very limited by severe arthritis in his knees, and he is somewhat of a surgical risk because of his smoking and his weight. *Id.*

On June 28, 2004, Plaintiff again presented to Dunlap Memorial Hospital with complaints of chest pain. Tr. at 462.  On July 28,2004, Dr. Milligan examined Plaintiff and referred him to George Seese, D.O.'s office for catheterization.  *Id*. at 382.  On August 19, 2004, Wayne Gross, D.O. performed a heart catheterization.  *Id*. at 372-73.  Dr. Gross observed Plaintiff's stent to be widely patent and his heart function was otherwise normal.  *Id*. at 372.

On June 24, 2005, Dr. Milligan examined Plaintiff and gave him approval for employment through Goodwill.  Tr. at 511.

On October 28, 2005, Plaintiff had an x-ray taken that showed mild to moderate osteoarthritis in his left knee and mild osteoarthritis in his right knee.  Tr. at 495.

On March 28, 2006, Plaintiff underwent another catheterization procedure.  Tr. at 530.  The procedure was successful.  *Id*. at 531.

### (ii)    Mental Impairments

On March 25, 2003, Frederick Leidal, Psy.D., a consulting psychologist, examined Plaintiff. Tr. 240.  Plaintiff told Dr. Leidal that he had been placed in special education as the result of being a "slow learner."  *Id*.  Dr. Leidal noted a history of diagnosis and treatment for anxiety since September of 2001.  *Id*. at 241.  Plaintiff reported taking Paxil to treat his anxiety condition.  *Id*.  He also stated that he always has his wife or his son with him, which helps alleviate his anxiety.  *Id*. Plaintiff reported that his daily activities include watching television, waiting for the mail to arrive, walking to the mailbox to get the mail, and driving his wife around town.  *Id*. He is able to take care of personal hygiene.  *Id*.  He can also cook and clean.  *Id*.

Following a mental status examination, Dr. Leidal diagnosed Plaintiff with Panic Disorder without Agoraphobia, Adjustment Disorder with Mixed Features, Borderline Intellectual Functioning, and Personal Disorder NOS with Dependent Traits.  Tr. at 243.  Dr. Leidal opined that Plaintiff's ability to work was moderately impaired due to panic disorder, problems with adjustment, borderline intellect, and dependent personality traits.  *Id*. at 244.  He concluded that Plaintiff was not impaired in his abilities to relate to others, to maintain attention to simple work related tasks, to follow short simple instructions or directions, and to obtain some type of productive employment without assistance.  *Id*. at 244.

-4-

On March 22, 2005, John Comley, Psy.D. conducted another psychiatric exam. Tr. at 554. Based upon a mental status exam, a clinical interview, and a Minnesota Multiphasic Personality Inventory-2, Dr. Comley diagnosed Plaintiff with Anxiety Disorder Due to Heart Condition with Panic Disorder without Agoraphobia symptoms. *Id*. at 557. Dr. Comley noted the following symptoms: recurrent, unexpected panic attacks involving an increased heart rate, shortness of breath, choking feelings, chest discomfort, lightheadedness, fear of losing control/going crazy, and paresthesias. *Id*. Dr. Comley recommended psychological treatment in an outpatient setting, a community support group for heart patients and sleep apnea patients, and a physical and psychological evaluation of his conditions. *Id*. Lastly, Dr. Comley opined that Plaintiff should be considered 'psychologically disabled' with regard to his work situation. *Id*.

### C.  Testimonial Evidence

### (i)  Plaintiff

At the administrative hearing, Plaintiff testified that he had an eighth grade education. Tr. at 580. He described his work history as an electrician, as a construction worker, and as a supervisor at a metal plant. *Id*. at 580-83.

Plaintiff then described his heart condition. Tr. at 583. He stated that he had experienced significant shortness of breath and fatigue. *Id*. He stated that his breathing problem has since been controlled with medication. *Id*. at 584. He admitted to smoking 10 cigarettes a day while taking medications for his breathing problem. *Id*. at 585. Plaintiff claimed that he was trying to stop smoking. *Id*. Plaintiff stated that, following his heart attack, he started to experience panic attacks. *Id*. at 587. As Plaintiff's heart condition improved, so did his panic attacks, until he was experiencing them only to a mild degree. *Id*. at 587-88. Plaintiff stated that he never goes anywhere by himself because he is afraid that he will experience another heart attack. *Id*. at 588. He stated that he takes diazepam to treat the condition. *Id*.

Plaintiff described his sleep apnea condition. Tr. at 585. Plaintiff stated that he was prescribed a CPAP machine to treat the condition. *Id*. at 585-86. He reported that he had difficulties using the machine at first, but he is now able to use it. *Id*. The machine help Plaintiff feel better rested when he wakes up in the morning, but he still falls asleep during the day. *Id*. at 586.

Next, Plaintiff discussed his epilepsy.  Tr. at 586-87.  He reported taking seizure medication since the age of 18 or 19.  *Id*. at 587.  Plaintiff stated the medication controlled his seizures, and he was unable to recall the last time he experienced one.  *Id*.

Plaintiff discussed his leg pain.  Tr. at 588.  Plaintiff stated that his legs swell up at night. *Id*.  Then, Plaintiff stated that his knees have been injected with medication on two occasions to treat his arthritis.  *Id*. at 589.  Plaintiff stated that Dr. Dulich informed him that he would need to have surgery on his knees, but he would have to lose some weight before the procedure could be safely performed.  *Id*. at 589-90.  Plaintiff stated that his legs will fall asleep and he experiences back pain if he sits for an extended period of time.  *Id*. at 590.

Plaintiff stated that he has experienced back pain since he tore all of the lower muscles in his back while working at Gertenschlagers — about 15 years earlier.[1]  Tr. at 592.  He takes Vicodin to treat the pain.  *Id*.  Plaintiff stated that the Vicodin "takes the edge off of [the pain] but the pain's still there."  *Id*.  He stated the he uses a cane to walk.  *Id*. at 593.

Plaintiff stated that his medications do not cause side effects.  Tr. at 593.

Plaintiff stated that his back pain, heart troubles, and "all the other problems" cause him to be depressed.  Tr. at 591.

Overall, Plaintiff stated that his conditions prevent him from sitting for 25 minute periods because his legs will go numb and he will experience knee and back pain.  Tr. at 594.  As a result, he claimed that he has to stand up and walk around every 20-25 minutes.  *Id*.  He stated that he is able to drive to the doctor, to the grocery store, and to the welfare office.  *Id*. at 595.

**(ii)    Medical Expert**

Dr. Jonathan Nusbaum testified as a medical expert.  Tr. at 597.  Dr. Nusbaum testified that Plaintiff had been treated for anxiety and panic disorder, which were conditions beyond Dr. Nusbaum's background preventing him from rendering an opinion on what limitations those conditions might impose.  *Id*.

---

[1]      Plaintiff worked at Gertenschlagers from 1985-1996.  *See* Tr. at 62, 582.

Dr. Nusbaum then testified that Plaintiff has been seizure free since some time prior to 2001. Tr. at 597. He stated that Plaintiff's history of degenerative joint disease was confirmed with x-ray studies. *Id*. He stated that Plaintiff is 345 pounds and five feet, eight inches tall, giving a body mass index of 51. *Id*. at 598. Dr. Nusbaum noted Plaintiff's sleep apnea and the prescribed CPAP machine. *Id*. He noted Plaintiff's history of myocardial infarction, and that Plaintiff had stents placed in the distal right coronary artery and the proximal left anterior descending artery. *Id*.

Dr. Nusbaum opined that none of Plaintiff's conditions were severe enough to meet a listing. *See* Tr. at 598-99. He opined, however, that Plaintiff had functional limitations from his coronary artery disease, his pulmonary disease, and his back and knee problems. *Id*. at 599. Based on these conditions, Dr. Nusbaum believed Plaintiff could lift 10 pounds occasionally and five pounds frequently. *Id*. He stated that Plaintiff could sit for an hour at a time and a total of six hours in an eight-hour workday. *Id*. He stated that Plaintiff could stand for 15 minutes at a time for a total of 3 hours in an eight-hour workday. *Id*. at 599-600. Dr. Nusbaum stated that it would be ideal for Plaintiff to have a sit/stand option. *Id*. at 600. He stated that Plaintiff should be limited to less than occasional (15% of the time) bending, stooping, squatting, crouching, and use of ladders and stairs. *Id*. Due to Plaintiff's daytime sleepiness, Dr. Nusbaum stated that he should not work at heights or operate hazardous machinery. *Id*. Dr. Nusbaum opined that Plaintiff should not work in environments with high concentrations of fumes, dust, or humidity or in areas below 35 degrees Fahrenheit or greater than 85 degrees Fahrenheit. *Id*. He also opined that Plaintiff was not limited in the use of his upper extremities in terms of gross or fine manipulation. *Id*. He stated that Plaintiff would have no difficulty with foot controls. *Id*. at 601.

The Court notes that a significant portion of the transcript of Dr. Nusbaum's testimony, particularly that related to lymphedema, is incomprehensible because of repeated indications of inaudible testimony. *See* Tr. at 600-601.

### (iii)    Vocational Expert

Lastly, Dr. Jerry Olsheski testified as a vocational expert. Tr. at 602. He classified Plaintiff's prior work as an electrician's helper as medium, semiskilled. *Id*. Plaintiff's work as a

-7-

construction worker was heavy, semiskilled. *Id*. Plaintiff's work at the stamping plant as a supervisor, press operator, forklift operator, and tractor-trailer driver was medium, semiskilled. *Id.*

The ALJ posed a hypothetical question to Dr. Olsheski, asking what jobs a person could perform with Plaintiff's age, education ,work history, and the impairments described by Dr. Nusbaum. Tr. at 603. Dr. Olsheski opined that such a person could not perform Plaintiff's past work, but he could perform **some** sedentary, unskilled positions. *Id*. (emphasis added). Dr. Olsheski opined such a person could work as a hand packer, as an assembly worker, and as a production inspector. *Id*. Dr. Olsheski stated that all of these jobs can be done with a sit/stand option at least once an hour, and with all of the other limitations Dr. Nusbaum placed on Plaintiff. *Id*. at 604.

Based on the RFS forms completed by state agency physicians, (Tr. at 245-60) Plaintiff's attorney then asked if such a hypothetical person could perform all of these jobs  if he were restricted to simple, routine, low stress tasks requiring only occasional interaction with others. *Id*. at 604. Dr. Olsheski stated all of the jobs he listed would fall within those parameters. *Id*. at 605.

The Court again notes that a significant portion of the transcript of Dr. Olsheski's  testimony is incomprehensible due to repeated indications of inaudible testimony. *See* Tr. at 602-605.

## III.    STATEMENT OF THE LAW

### A.    Steps to Evaluate Entitlement to Social Security Benefits

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R.  404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R.  404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4.      If an individual is capable of performing the kind of work he -or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5.      If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps, and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and RFC. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**B.      Standard of Review**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. The Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, the Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.; Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984). Furthermore, in reviewing the ALJ's decision, deference is due to the ALJ's credibility determinations. *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir. 1993). A reviewing court may not retry the

-9-

case, resolve factual or evidentiary conflicts, or decide questions of credibility.  *See Cutlip v.*

*Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

### IV.     ANALYSIS

#### A.     Whether Substantial Evidence Supports the ALJ's Finding that Plaintiff Could Perform a Full Range of Sedentary Work Activity and Therefore Rely Upon the Medical-Vocational Guidelines to Direct a Finding of No Disability

Plaintiff first argues that the ALJ determined that he could perform the full range of

sedentary work, but substantial evidence demonstrates that Plaintiff is limited to less than the

sedentary work level.  ECF Dkt. #15 at 9.  The Court first notes that, in setting forth this argument,

Plaintiff cites to a Margolius, Margolius, & Associates cover page for the ALJ's decision.  *See ECF*

Dkt. #15 at 9 citing Tr. at 13.  The Court has reviewed the entirety of the ALJ's decision and

concludes that there is no finding by the ALJ that Plaintiff can perform the full range of sedentary

work activity.  In fact, the ALJ's decision states:

> **If the claimant had the residual functional capacity to perform the full range of sedentary work,** a finding of "not disabled" would be directed by Medical-Vocational Rule 201.19.  **However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled sedentary occupational base,** I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

Tr. at 22 (emphasis added).

Plaintiff further asserts that the necessity to alternate between sitting and standing or walking

erodes the occupation base for the full range of unskilled sedentary work.  ECF Dkt. #15 citing SSR

96-9p.  The ALJ stated that he adopted the assessment of medial advisor, Dr. Nusbaum.  *Id*. at 19.

Dr. Nusbaum stated that Plaintiff could sit for an hour at a time for a total of six hours in an eight-

hour workday, and could stand and walk for 15 minutes at a time for a total of three hours in an

eight-hour workday, but **ideally**, Plaintiff's job would have a sit/stand option.  Tr. at 599-600

(emphasis added).  Dr. Nusbaum did not conclude that it was necessary for Plaintiff to have a

sit/stand option; he stated that it would be ideal, making Plaintiff's argument misplaced.

Furthermore, SSR- 96-9p defines "sedentary work"in its pertinent part:

-10-

> Sitting would generally total about 6 hours of an 8-hour workday.
>
> * * *
>
> The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday. If an individual can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded.

*Id*. at *3, *6.  Therefore, the occupational base for sedentary work is not limited by Dr. Nusbaum's restrictions on Plaintiff for a total of six hours of sitting per workday and three hours of standing or walking per workday.  The fact that Dr. Nusbaum opined that a sit/stand option would be beneficial does not change the fact that Dr. Nusbaum's findings allow Plaintiff to engage in the full range of unskilled sedentary work.  Furthermore, the vocational expert, Dr. Olsheski, testified that Plaintiff could perform the jobs of a handpacker, an assembler, or a production worker.  Tr. at 602.  The ALJ specifically asked if all of the jobs could be done with all of the limitations Dr. Nusbaum prescribed, specifically the sit/stand option.  *Id*. at 604.  The ALJ relied upon Dr. Olsheski's testimony in determining that sufficient jobs exist in the national economy for a person with Plaintiff's limitations.  *Id*. at 22. Therefore, the Court finds that the ALJ did account for Plaintiff's purported sit/stand limitation.

Plaintiff also contends that the ALJ failed to give perceptible weight to lay testimony where it is fully supported by the reports of the treating physicians.  ECF Dkt. #15 at 9 citing *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  Plaintiff's argument is not well-taken.  Here, the lay testimony that Plaintiff contends to be indicative of disability is contradicted by the reports of treating physicians.  Dr. Milligan stated that Plaintiff was "OK for employment through goodwill."  Tr. at 511.  On January 31, 2003, Dr. Milligan also stated that Plaintiff was "amply strong" and had "no limitations as far as standing, walking, lifting, grasping, bending, [and] stooping."  *Id*. at 212.  Further, on January 21, 2003, Dr. Sahgal, concluded that Plaintiff was not significantly limited in his mental or physical capacities.  *See Id*. at 220-21.

Additionally, the ALJ considered Plaintiff's complaints of heart complications, panic attacks, shortness of breath, low back pain, and knee pain.  *Id*. at 21.  The ALJ stated that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not

-11-

entirely credible.  *Id*.  Plaintiff contends that the ALJ did so "without any analysis."  ECF Dkt. #15 at 10.  This Court affords great deference to an ALJ's findings regarding a claimant's credibility since the ALJ observes a witness' demeanor and credibility and has the opportunity to do so.  *Casey v. Health and Human Servs.,* 987 F.2d 1230, 1234 (6th Cir. 1993), quoting *Hardaway*, 823 F.2d at 928.  It is not the province of this Court to "...try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  Although subjective complaints of pain can support a claim of disability, an ALJ is not required to accept a plaintiff's own testimony regarding his pain.  *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 686 (6th Cir. 1992); *Gooch v. Secretary of Health and Human Services*, 833 F.2d 589, 592 (6th Cir. 1987).  Contrary to Plaintiff's assertions, the ALJ did provide reasons for discounting Plaintiff's assertions.  The ALJ based his decision upon inconsistent medical evidence, the fact that Plaintiff drives without limitations, and Plaintiff's noncompliance with medical treatment in continuing to smoke.  *See Id*.  Therefore, the Court finds substantial evidence supports the ALJ's decision to discount Plaintiff's complaints.

Lastly, Plaintiff contends that the ALJ did not consider the combined impact of the cardiac and orthopedic impairments on exertion.  ECF Dkt. #51 at 10.  This argument is not well-taken because the ALJ stated that he adopted Dr. Nusbaum's assessment of Plaintiff's functional capacity, and Dr. Nusbaum believed that Plaintiff's restrictions were the result of his coronary artery disease, his pulmonary disease, and his back and knee problems.  Tr. at 19-599.  As discussed above, the ALJ relied upon Dr. Olsheski's testimony in determining that sufficient jobs exist in the national economy for a person with the limitations Dr. Nusbaum imposed.  *Id*. at 22.  Therefore, the Court finds that the ALJ did consider all of the Plaintiff's limitations.

**B.      Whether Substantial Evidence Supports the ALJ's Findings with respect to Plaintiff's Mental Restrictions**

Plaintiff contends that the ALJ erred in his assessment of Plaintiff's mental impairment.  ECF Dkt. #15 at 11.  Plaintiff reasons that Dr. Leidal opined that he would be moderately limited in his ability to tolerate stressors and complete an average work week, but the ALJ failed to pose a proper hypothetical to the vocational expert taking that restriction into account.  *Id*. at 12.  Plaintiff further

-12-

argues that Dr. Comley performed a psychological evaluation that the vocational expert interpreted to indicate a psychological disability.  *Id.*

Plaintiff's argument lacks merit because Plaintiff posed a hypothetical question to Dr. Olsheski:

> . . . if I add to the Judge's hypothetical question that this individual is restricted to simple, routine, low stress tasks requiring only occasional interaction with others, would that individual be able to perform the jobs you've identified?

Tr. at 604.  Plaintiff stated that the hypothetical was taken from the state psychologists RFC Assessment form.  *See Id.* at 245-47, 604.  The RFC Assessment, which was completed with all of the medical records available through August 2003, states that Plaintiff is moderately limited in his ability to interact with the general public and he was not significantly limited in his ability to get along with coworkers.  *Id.* at 246-47.  Dr. Olsheski stated that all of the jobs he listed would comport with the limitations in Plaintiff's hypothetical question based upon the RFC Assessment form.  *Id.* at 605.  Again, the ALJ  relied upon Dr. Olsheski's testimony in determining that sufficient jobs exist in the national economy.  *Id.* at 22.

Although a significant portion of the transcript from Dr. Olsheski's testimony is incomprehensible, that testimony relates to the vocational effects of Dr. Comely's opinion.  *See* Tr. at 605.  The ALJ determined that Dr. Comely's opinion was not entitled to significant weight because Dr. Comely had indicated that the results of the personality test were invalid due to Plaintiff exaggerating his problems and trying to create a good impression.  *Id.* at 20; 555.  A consulting psychologist's finding that a personality test is invalid constitutes substantial evidence sufficient for an ALJ to reject the opinion.  *Bell v. Barnhart*, No. 04-3833, 2005 WL 2175918 at *6 (6th Cir. July 20, 2005) unreported.  Furthermore, the ALJ found that the medical record as a whole is more consistent with Dr. Leidal's opinion.  *Id.* at 20.  Therefore, the ALJ properly discounted Dr. Comely's opinion, and the deficiency in the transcript is harmless.

Since the ALJ properly discounted Dr. Comely's opinion, Plaintiff's attorney posed a hypothetical question to Dr. Olsheski taking Plaintiff's mental impairments into account, and the ALJ relied upon Dr. Olsheski's opinion, the Court finds that Plaintiff's argument lacks merit.

-13-

## V.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's appeal and AFFIRMS the Administrative Law Judge's decision denying Supplemental Security Income and Disability Insurance Benefits.

IT IS SO ORDERED.

DATE: February 22, 2008                          _s/ George J. Limbert_____
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE